**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| BP West Coast Products LLC, et al., | ) | |
| Plaintiffs, | ) ) ) | No. CV-07-1807-PHX-PGR |
| vs. | ) | |
| Takhar Brothers Inc., et al., | ) ) | ORDER |
| Defendants. | ) ) ) | |

Pending before the Court is Plaintiffs/Counterdefendants' Rule 12(b)(6) Motion to Dismiss Counterclaims (doc. #24).  Having considered the parties' memoranda, the Court finds that the motion should be granted in part and denied in part.[1]

Background

Defendants Takhar Brothers, Inc. and Kacill, LLC entered into various contracts with ARCO Products Company in 1997 and 1998, respectively, that made them both ARCO® and am/pm® franchisees; defendant Gurvinder Takhar is the president of both companies.[2]  Plaintiff BP West Coast Products LLC

---

[1]    The Court concludes that oral argument would not aid the decisional process.

[2]    The defendant companies each entered into four contracts with ARCO:

("BPWCP"), ARCO's successor in interest, terminated the defendant companies' franchises in April, 2007, which was prior to their contractual end date.  BPWCP commenced this action on September 21, 2007, alleging federal claims for federal trademark infringement, trademark dilution, and unfair competition, and state law claims for breaches of the various contracts underlying the franchises, breach of the covenants of good faith and fair dealing related to the gasoline and mini-market contracts, and for breach of various guaranty agreements.

The defendant companies ("defendants") filed counterclaims on October 15, 2007, alleging that BPWCP breached their Contract Dealer Gasoline Agreements, their am/pm Mini Market Agreements, and their two loan agreements, breached its duty of good faith and fair dealing with regard to each of the contracts, and violated the Petroleum Marketing Practices Act.

Discussion

BPWCP, broadly contending that the defendants "neither cite a single contractual provision nor allege a single fact, in support of their counterclaims. Indeed, Defendants allege only legal conclusions[,]" has moved to dismiss with prejudice all of the defendants' counterclaims pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

The Court may dismiss a counterclaim for failure to state a claim if the defendants fail to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955, 1974 (2007). While a counterclaim need not plead detailed factual allegations in order to survive a Rule 12(b)(6) motion, some factual allegations are necessary since

---

a Contract Dealer Gasoline Agreement, an am/pm Mini Market Agreement, an am/pm Loan Agreement, and a Gasoline Loan Agreement.

Fed.R.Civ.P. 8(a)(2) "still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Id.*, 127 S.Ct. at 1965 n.3.  In determining the sufficiency of the defendants' counterclaims, the Court must accept the defendants' factual allegations in the counterclaims as true and must construe them in the light most favorable to the defendants; however, the Court is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.  In re Gilead Sciences Securities Litigation, __ F.3d __, 2008 WL 3271039, at *6 (9th Cir. Aug. 11, 2008).  If allegations in a counterclaim, however succinct, are sufficient to give fair notice of what the claims are and the grounds on which they rest, concerns about specificity are properly addressed through discovery devices.  Skaff v. Meridien North America Beverly Hills, LLC, 506 F.3d 832, 842 (9th Cir.2007).  Since the pending motion is one to dismiss pursuant to Rule 12(b)(6), the Court has limited its review to the allegations contained in the pleadings, the various exhibits attached to the complaint, and matters of which it may take judicial notice.

I. Violation of the PMPA

The defendants allege in paragraph 207 of their counterclaims that BPWCP terminated their franchises in violation of the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801, et seq.  BPWCP argues that this counterclaim must be dismissed because the documents attached to its complaint establish as a matter of law that it fully complied with the PMPA in terminating the franchises.   The Court notes that a justifiable termination under the PMPA also renders the termination justifiable under the parties' contracts. *See* Portaluppi v. Shell Oil Co., 869 F.2d 245, 247 (4th Cir.1989) (Court concluded that it needed to discuss only the validity of the franchise termination pursuant to

1   the PMPA because "if Shell's termination action were justified under the PMPA, it

2   would also satisfy the parties' agreement.")

3        Under the PMPA, a gas station franchisee may bring a civil action for

4   wrongful termination of the franchise. 15 U.S.C. § 2805(a).  The PMPA prohibits a

5   motor fuel franchisor from terminating a franchise agreement prior to the

6   conclusion of the franchise term except in the circumstances set forth in 15

7   U.S.C. § 2802(b)(2).   Since the overriding purpose of the PMPA is to protect the

8   franchisee's reasonable expectation of continuing the franchise relationship,

9   Unocal Corp. v. Kaabipour, 177 F.3d 755, 762 (9th Cir.), *cert. denied*, 528 U.S.

10  1061 (1999), the terms of the PMPA are to be liberally construed to protect the

11  franchisees. *Id.* at 765.  However, the PMPA is not a one-way statute which must

12  be single-mindedly construed in favor of the franchisees' position. *Id.* at 762.

13  *Accord*, Humboldt Oil Co., Inc. v. Exxon Co., U.S.A., 695 F.2d 386, 389 (9th

14  Cir.1982) (Court noted that while the PMPA must be given a liberal construction

15  consistent with its goal of protecting franchisees, it must not be interpreted

16  inconsistently with its plain language and outside of its logical boundaries.)

17        A. Gurvinder Takhar's Felony Conviction

18        BPWCP contends in part that the defendants' counterclaims fail as a

19  matter of law because Gurvinder Takhar's felony conviction alone constituted a

20  valid statutory and contractual ground for terminating the franchise agreements.

21  It is undisputed that Gurvinder Takhar, the president and principal shareholder of

22  Takhar Brothers, Inc. and the president and a member of Kacill, LLC, was

23  convicted in this Court of attempted tax evasion pursuant to 26 U.S.C. § 7201, a

24  felony, on April 14, 2003, which was during the time the franchise agreements at

25

26

- 4 -

issue were in effect.[3]  BPWCP's termination notices listed Takhar's conviction as one of the grounds for the franchise terminations.

The PMPA specifically provides that the "conviction of the franchisee of any felony involving moral turpitude" is a valid ground for terminating a franchise. 15 U.S.C. § 2802(c)(12).[4]  Although BPWCP expressly relies on this provision, it inexplicably makes no effort to establish that Takhar's conviction for attempted tax evasion was in fact one involving moral turpitude.  The Court nevertheless concludes for the purpose of the pending motion that Takhar's conviction involved moral turpitude. *See* Carty v. Ashcroft, 395 F.3d 1081, 1084-85 (9th Cir.), *cert. denied*, 546 U.S. 818 (2005) (Court concluded that the willful failure to file a tax return, with the intent to evade taxes, constitutes a crime of moral turpitude because it involves fraud); *see also*, Jordan v. De George, 341 U.S. 223, 229, 71 S.Ct. 703, 706 (1951) (Supreme Court concluded that a conviction for conspiring to defraud the United States of taxes on distilled spirits constituted a crime of moral turpitude); Wittgenstein v. Immigration & Naturalization Service, 124 F.3d 1244, 1246 (10th Cir.1997) ("Courts have determined that the wilful evasion of federal income taxes is a crime of fraud involving moral turpitude.")

The defendants allege in part in their counterclaim, and argue in their response, that BPWCP's reliance on Takhar's conviction violated the PMPA

---

[3]

The Court takes judicial notice of the docket in United States v. Takhar, CR 02-0355-PHX-FJM.

[4]

The Contract Dealer Gasoline Agreements, in § 17.1(b)(l), and the am/pm Mini Market Agreements, in § 18.03(2)(g), also permit termination for a conviction of any felony involving moral turpitude.

because Takhar was not a franchisee for purposes of § 2802(c)(12).[5]   The Court

is unpersuaded because the defendants do not dispute that Takhar in effect

controlled both franchises. *See* Atlantic Richfield Co. v. Guerami, 820 F.2d 280,

282 (9th Cir.1987) (Court concluded that a franchise termination did not violate the

PMPA even if a corporation was the nominal franchisee because the

corporation's president and sole shareholder was convicted of a crime involving

moral turpitude.); Humboldt Oil Co. v. Exxon Co., U.S.A., 695 F.2d at 389 (Court

affirmed holding that a franchise held by a corporation may be terminated under

the PMPA when its sole shareholder is convicted of a crime involving moral

turpitude.); *see also*, Rising Micro, L.L.C. v. Exxon Mobil Oil Corp., 2006 WL

1193839, at *6-8 (D.D.C. May 3, 2006) (Court concluded that the weight of

authority is that a franchise termination under the PMPA may be based on

criminal conduct by a franchisee's sole shareholder and president.); Glenside

West Corp. v. Exxon Co., U.S.A., 761 F.Supp.1118, 1130 (D.N.J.1991) (Court

concluded that the criminal conviction of a franchisee's president and sole

shareholder for a crime involving moral turpitude was a proper ground to

terminate a franchise under the PMPA.)

     Nevertheless, the Court cannot conclude at this time that Gurvinder

Takhar's felony conviction conclusively determines the propriety of the

termination of the franchises under the PMPA because the Court cannot

conclude as a matter of law that BPWCP timely terminated the franchises after

learning of Takhar's conviction.  Under the PMPA, BPWCP could validly

---

[5]

     The Court notes that the Contract Dealer Gasoline Agreement
specifically provides that it may be terminated if the buyer's majority shareholder
or one of its general partners is convicted of a felony involving moral turpitude.

1    terminate the franchise agreements based on Takhar's felony conviction only if it

2    first acquired actual or construction knowledge of the conviction, at most, no more

3    than 120 days prior to its notification of termination. 28 U.S.C. § 2802(b)(2)(C).[6]

4    The defendants allege in their Answer and Counterclaim, *see* paragraphs 59,

5    99,120 and 187, that BPWCP learned of Gurvinder Takhar's conviction in 2003,

6    *i.e.* several years before it sent its notices of termination to the defendants on

7    April 4, 2007.  Since BPWCP's motion is one pursuant to Fed.R.Civ.P. 12(b)(6),

8    the Court must assume the truth of that factual allegation in the counterclaim and

9    must view it in light most favorable to the defendants.[7]

10

11

---

12   [6]

13           The Court concludes for the purposes of the motion to dismiss that it is
     irrelevant that BPWCP did not include the same temporal limitations in its
14   contractual termination provisions related to felony convictions for crimes
     involving moral turpitude because the parties' contracts cannot lessen the
15   protections provided by the PMPA.  *See* Chevron U.S.A., Inc. v. Lutz, 271
     F.Supp.2d 1196, 1201-02 (N.D.Cal.2003) ("Allowing Chevron to expand the
16   statutory grounds for termination simply by writing stricter terms into its contracts
     would frustrate the PMPA's purpose of protecting the franchisee from uneven
17   bargaining power and would transform Congress's explicit judgment on the
     proper grounds for termination into a list of suggestions for fair franchise
18   agreements."); *cf.* Lyons v. Mobil Oil Corp., 526 F.Supp. 961, 964 (D.Conn.1981)
     (Court noted that a franchise agreement cannot contain a provision that
19   contravenes the clear intent of Congress in enacting the PMPA.)  *See also*, 15
     U.S.C. § 2805(f)(1) (PMPA prohibits a franchisor from requiring a franchisee to
20   waive any right it has under the PMPA as a condition for entering into or renewing
     a franchise.)
21
     [7]
22
             There is in any case a material factual dispute as to when BPWCP first
23   learned of Takhar's conviction because BPWCP alleges in its complaint, *see*
     paragraph 56, that it first learned of the conviction in February, 2007, and it has
24   submitted a declaration with its reply to that effect from Ronald Makis, its regional
     manager.  A material factual dispute cannot be resolved through a Rule 12(b)(6)
25   motion.

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

B. Timely Notice

The defendants also allege in paragraph 207 of their counterclaims that BPWCP violated the PMPA by terminating their franchises without giving the required 90 days notice.  BPWCP argues that this claim must be dismissed as spurious.

The PMPA generally requires that a franchisor give notice to the franchisee of the termination of the franchise not less than 90 days prior to the date the termination is to take effect,15 U.S.C. § 2804(a)(2), and it further requires that the notification must state the date on which the termination takes effect. 15 U.S.C. § 2804(c)(3).

It is undisputed that BPWCP's notices of termination to the defendants, which were dated April 4, 2007, stated that the franchises and related contracts "shall terminate ninety (90) days from the date of this Notice, on <u>June 29, 2007</u>[.]" (Emphasis in original).  The parties do not dispute that 90 days from April 4, 2007 is July 3, 2007, not the stated June 29, 2007.   Since it is well-established that the notice requirements of the PMPA must be strictly complied with, <u>Khorenian v. Union Oil Co. of California</u>, 761 F.2d 533, 535 n.1 (9th Cir. 1985), and since the termination notices failed to properly state the exact date of termination, the Court agrees with the defendants that they have stated a violation of the notice requirement of the PMPA, however de minimus that violation may be.[8]  *Cf.* <u>Blankenship v. Atlantic-Richfield Co.</u>, 478 F.Supp. 1016, 1018 (D.Ore.1979) (Court noted that if Congress intended a court to have the power to cure or waive

_____

[8]

While the Court certainly understands BPWCP's contention that the misstated termination date was at most harmless error as the defendants were not damaged thereby, that is not an issue that can be resolved though the Rule 12(b)(6) motion.

a notice defect under 15 U.S.C. § 2804, it would have so provided under the notice provisions of § 2804).

BPWCP argues that even if the misstated termination date technically violated the 90-day provision of § 2804, it still gave proper and timely notice to the defendants pursuant to 15 U.S.C. § 2804(b)(1)(A).  This provision contains an exception to the 90-day notice requirement in that it permits a franchisor to give less than 90 days notice in circumstances where it would not be reasonable to give 90 days notice; under such circumstances, the franchisor is permitted to give notice "on the earliest date on which furnishing of such notification is reasonably practicable."  BPWCP's contention is that Gurvinder Takhar's felony conviction provided the basis for a shortened notice period under this exception.  The Court agrees, but only to the extent that BPWCP is permitted to rely on Takhar's conviction of a felony crime involving moral turpitude as a ground for terminating the franchises. *See* Glenside West Corp. v. Exxon Co., U.S.A., 761 F.Supp. at 1131 (Court concluded that once the franchisee was convicted of a felony involving moral turpitude, the franchisor was justified in immediately terminating the franchise without giving a 90-day notice.)   But since there is an unresolved question as to whether the PMPA permits BPWCP to rely on Takhar's conviction as a ground for terminating the franchises, the Court cannot conclude at this time that BPWCP timely notified the defendants of the terminations.

C. Failure to Specify Grounds for Termination

The defendants additionally allege in paragraph 207 that BPWCP violated the PMPA by generally failing to specify the grounds upon which the franchise agreements were terminated, and specifically by failing to specify as a ground for termination a reason BPWCP is now asserting, *i.e.,* a purported assignment of

- 9 -

1    the defendants' rights to an assignee without BPWCP's permission.

2         The notification provision of the PMPA requires in part that any notice of

3    termination shall contain a statement of reasons for the termination. 15 U.S.C.

4    § 2804(c)(3)(A).  There is no dispute that the notices of termination facially stated

5    several reasons for the terminations, thus complying with § 2804(c)(3)(A) to that

6    extent.  For that reason, the Court concludes that the only issue here is whether

7    the defendants have stated a claim under the PMPA limited to BPWCP's attempt

8    to now rely on the alleged improper assignment of the franchises as a reason for

9    terminating Kacill's franchise-related agreements since it is undisputed that the

10   notice of termination sent to Kacill (unlike the notice sent to Takhar Brothers) did

11   not mention the alleged assignment as a reason for its termination.  The Court

12   concludes that BPWCP cannot now rely on the alleged assignment with regard to

13   Kacill's termination because the PMPA prohibits a franchisor from relying on a

14   ground for termination not specified in the notice of termination. O'Shea v. Amoco

15   Oil Co., 886 F.2d 584, 597-98 (3rd Cir.1989) ("In order for the notice requirement

16   [of 15 U.S.C. § 2804(c)(3)(A)] to be meaningful, it must be the case that the

17   franchisor, defending a PMPA action, not assert new reasons for the termination

18   in court; the [franchisor] must establish that the termination was proper under the

19   PMPA based on the reasons that it gave to the franchisee in the notice of

20   termination."); cf. Svela v. Union Oil Co. of California, 807 F.2d 1494, 1499 (9th

21   Cir.1987) ("A nonrenewal letter must indicate by its language which section of the

22   PMPA provides the grounds for nonrenewal, and grounds not included in the

23   notice may not be relied upon.")  Except to that limited extent, the Court agrees

24   with BPWCP that the defendants have not stated a claim for violation of

25   § 2804(c)(3)(A).

26

- 10 -

1

D. Inability to Participate in Day to Day Operations

2

The defendants further allege in paragraph 207 that BPWCP violated the

3

PMPA by using Gurvinder Takhar's purported inability to personally manage the

4

properties during his incarceration as a specified ground for terminating both of

5

the franchises.[9]  It is undisputed that Takhar, as a result of his felony conviction,

6

was incarcerated between July and December of 2003.

7

BPWCP argues that this aspect of the PMPA counterclaim fails to state a

8

claim as a matter of law because the am/pm Mini Market Agreements expressly

9

authorized termination if Gurvinder Takher was unable to participate in the daily

10

operations of the businesses, which he could not do while incarcerated.  The

11

defendants argue in support of this portion of its PMPA claim that the cited

12

portion of the am/pm Mini Market Agreements applies only to the franchise

13

"operator", which under the agreements were Takhar Brothers and Kacill, not

14

Gurvinder Takhar.[10]

15

_____

16

[9]

Both notices, which were addressed to Gurvinder Takhar, stated in
relevant part that "[a]s a result of your actions [in being arrested, convicted and

17

serving time in prison for tax evasion], you were unable to participate in the day to
day operation of your facility.  Article 4.03 of your am/pm [Mini Market] agreement

18

states that "Operator shall participate in the am/pm business for a period of at
least 40 hours per week[.]"

19

Section 4.04 of the agreements provides that a breach of Section 4.03

20

"shall constitute a breach of this Agreement."

21

[10]

22

The defendants also conclusorily contend that Gurvinder Takhar was
available and did personally manage the properties during his incarceration.

23

They base this contention on the cursory declaration of Gurvinder Takhar
submitted as an exhibit to their response.  Takhar's declaration merely states in

24

relevant part that "[a]t all times while incarcerated, I was able to personally
oversee the operations of the am/pm stores franchised by Takhar Brothers, Inc.

25

and Kacill, LLC[;]" an allegation to that effect does not appear to have been made
anywhere in the defendants' Answer and Counterclaim.  Since the pending

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

The Court is unpersuaded by the defendants' argument because it concludes, solely for purposes of the motion to dismiss, that § 4.03's definition of "operator" for purposes of that section includes Gurvinder Takhar given his ownership and managerial status in both companies.[11]  Nevertheless, even if the Court were to assume that Takhar's incarceration constituted "the occurrence of an event which is relevant to the franchise relationship and as a result of which termination of the franchise ... is reasonable" for purposes of 15 U.S.C. § 2802(b)(2)(C), the Court cannot conclude at this time that this aspect of the PMPA counterclaim fails to state a claim as a matter of law due to the factual issue related to when BPWCP learned of Takhar's incarceration for purposes of the time limitations of § 2802(b)(2)(C).

E. Demand for Monies Not Due

The defendants finally allege in paragraph 207 that BPWCP violated the PMPA by demanding monies that were not yet due from Kacill and Takhar Brothers.  The parties agree that the basis for this allegation is BPWCP's demand under the loan agreements for liquidated damages and accelerated loan repayments after the franchise agreements were terminated.  BPWCP conclusorily argues that this allegation fails to state a claim as a matter of law

motion is one pursuant to Fed.R.Civ.P. 12(b)(6), the Court cannot, and does not, rely on Takhar's declaration in resolving the motion to dismiss.

[11]      Section 4.03 of the am/pm Mini Market Agreements provides in part: "For purposes of Sections 4.03 and 4.04, references to operator shall mean: ... if Operator is a corporation, all shareholders or the Operational Designee as designated by the corporation in Section 16.01(a), who must be an officer or shareholder; if Operator is a limited liability company ("LLC") ... all members of the LLC or the Operational Designee as designated by the LLC in Section 16.01(a), who must be a manager or member of the LLC[.]"

1    because the monies were contractually due and owing as a result of the franchise

2    terminations, while the defendants conclusorily argue that this claim for improper

3    acceleration of the loan agreements cannot properly be dismissed because the

4    franchise agreements were improperly terminated.  The Court concludes that this

5    issue of the propriety of the acceleration of the loans cannot be decided through a

6    Rule 12(b)(6) motion given the continuing issue as to whether the franchise

7    agreements were properly terminated.

8    II. State Law Claims

9        A. Contract Dealer Gasoline Agreements

10       The defendants allege in paragraphs 193-196 of the counterclaims that

11   BPWCP breached the Contract Dealer Gasoline Agreement as to each of them

12   "by terminating the same before it expired and without factual and legal reason to

13   do so."  BPWCP argues that these counterclaims fail as a matter of law because

14   the defendants do not cite a single contractual provision that it allegedly breached

15   and because it had ample grounds on which to terminate the agreements.  The

16   Court agrees that these counterclaims fail to state a claim for relief, albeit for a

17   different reason.

18       Although it is not an issue raised by the parties, it is well established that

19   "[s]tate law relating to [petroleum] franchise termination is specifically preempted"

20   by 15 U.S.C. § 2806(a).  Humboldt Oil Co., Inc. v. Exxon Co., U.S.A., 823 F.2d

21   373, 374 (9th Cir.1987), cert. denied, 485 U.S. 1021 (1988); accord, In re Herbert,

22   806 F.2d 889, 892 (9th Cir.1986) ("This section [15 U.S.C. § 2806(a)] provides for

23   preemption of all state law inconsistent with the PMPA.  The language of section

24   2806(a) makes clear the PMPA was intended to preempt all state law with

25   respect to termination of a petroleum franchise.") (Emphases in original.)  Since

26

- 13 -

1   the Contract Dealer Gasoline Agreements are ones clearly falling within the

2   purview of the PMPA and since the breach of contract counterclaims related to

3   those agreements expressly arise from their termination, they are clearly

4   preempted by the PMPA and the issues underlying them will be litigated as part

5   of the PMPA counterclaim. *See* Chevron, U.S.A., Inc. v. Mebtahi, 148 F.Supp.2d

6   1019, 1028 (C.D.Cal.2000) (Court concluded that a state law breach of contract

7   claim was preempted by the PMPA, as well as superfluous, because it was

8   premised on the same facts, and sought the same relief, as the PMPA claim.)

9         B. am/pm Mini Market Agreements

10        The defendants allege in paragraphs 197-200 of the counterclaims that

11  "Atlantic Richfield Company, and/or it successor in interest" breached the am/pm

12  Mini Market Agreement as to each of them "by terminating such agreement

13  before its term expired and without prior breach" of the agreement by either

14  defendant.  BPWCP argues that these counterclaims fail as a matter of law

15  because the defendants fail to cite a single contractual provision that it allegedly

16  breached, because the defendants failed to allege that they provided ARCO with

17  either written notice of default or an opportunity to cure the alleged default as

18  required by § 18.01 of the agreements, and because it was contractually

19  permitted to terminate the agreements as a result of Gurvinder Takhar's felony

20  conviction.

21        The Court is unwilling to resolve at this time the issue of whether the

22  counterclaims related to the am/pm Mini Market Agreements state a claim

23  because the resolution of that issue initially depends on whether the claims are

24  preempted by the PMPA, which is an issue that the parties have not briefed and

25  one that the Court believes should not be decided *sua sponte* notwithstanding

26

- 14 -

1    that these counterclaims also arise from the termination of the agreements.

2    While certain secondary contractual arrangements between parties covered by

3    the PMPA may be preempted by the PMPA, not all are - the issue is whether the

4    am/pm Mini Market Agreements are secondary agreements so inextricably linked

5    to the fuel franchises that they are covered by the PMPA, or whether they

6    constitute other contractual arrangements not encompassed by the PMPA's

7    definition of a covered franchise.  *See* Millett v. Union Oil Co. of California, 24

8    F.3d 10 (9th Cir.1994) (Discussing cases dealing with whether am/pm mini-market

9    franchises are or are not covered by the PMPA - *e.g.*, Smith v. Atlantic Richfield

10   Co., 533 F.Supp. 264 (E.D.Pa.), *aff'd without op.*, 692 F.2d 749 (3rd Cir.1982)

11   (Court found that an am/pm mini-market franchise was not essential to the motor

12   fuel franchise and therefore its termination was not covered by the PMPA);

13   Atlantic Richfield Co. v. Brown, 1985 WL 3316 (N.D.Ill. Oct. 21,1985) (Court

14   found that a state law claim related to the termination of an am/pm mini-market

15   agreement was preempted by the PMPA as that agreement was inextricably

16   linked to the gasoline franchise agreement.); Aurigemma v. Arco Petroleum

17   Products Co., 698 F.Supp. 1035 (D.Conn.1988) (Court found that the PMPA did

18   not extend to an am/pm mini-market agreement because that agreement could

19   exist independent of the companion fuel franchise.)

20          C. Loan Agreements

21          The defendants allege in paragraphs 201- 203 of the counterclaims that

22   "Atlantic Richfield Company, and/or it successor in interest" breached the

23   defendants' loan agreements by improperly attempting to accelerate the amounts

24   due under them.  BPWCP argues that these counterclaims fail as a matter of law

25   because the counterclaim related to the Takhar Brothers fails to use the word

26

- 15 -

1    "breach" in it and because the acceleration of payment demands were

2    contractually proper given that the franchise agreements were terminated.

3    Regardless of whether or not these counterclaims are preempted by the PMPA,

4    which is an issue that the Court does not now decide, the Court cannot conclude

5    as a matter of law at this time that the loans were properly accelerated because

6    that issue depends on whether the franchise-related agreements were properly

7    terminated.[12]

8            D. Implied Covenant of Good Faith and Fair Dealing

9            The defendants allege in paragraphs 204 and 205 of the counterclaims that

10    the plaintiffs have breached the covenant of good faith and fair dealing implied in

11    each of the contracts at issue because they have withheld monies lawfully due

12    the defendants for display allowances and load-to-load deposits.  BPWCP argues

13    that this counterclaim fails as a matter of law because the defendants do not

14    allege the contractual basis for such monies, the amount of the monies allegedly

15    withheld, or that the defendants provided it with written notice of the default and

16    an opportunity to cure the default as contractually required.

17            Even if the Court were to assume that this counterclaim sounds in contract,

18    the Court is not in a position at this time to determine, as it initially must, whether

19    such a claim is preempted by the PMPA.  *See* Simmons v. Mobil Oil Corp., 29

20    F.3d 505, 512 (9th Cir.1994) (Court concluded that certain aspects of claims under

21    Arizona law for breach of the implied covenant of good faith and fair dealing were

22

23            [12]

24            The Court notes that BPWCP's argument that the counterclaim related
       to the Takhar Brothers' loan agreements fails to state a claim because it does not
25    contain the word "breach" is essentially frivolous - since the counterclaim
       specifically alleges that ARCO/BPWCP have "improperly attempted to accelerate
26    the loan agreements" it sufficiently alleges that a breach occurred.

- 16 -

preempted by the PMPA and that some were not.)  Until the preemption issue is resolved, the Court cannot even reach the issue of whether the counterclaim states a contract-based implied covenant claim under Arizona law.[13]

Therefore,

IT IS ORDERED that Plaintiffs/Counterdefendants' Rule 12(b)(6) Motion to Dismiss Counterclaims (doc. #24) is granted solely to the extent that defendants Takhar Brothers, Inc. and Kacill, LLC's breach of contract counterclaims related to the Contract Dealer Gasoline Agreements, set forth in paragraphs 193-196 of the Answer and Counterclaim, are dismissed as preempted by the Petroleum Marketing Practices Act.

DATED this 9th day of September, 2008.

Paul G. Rosenblatt
United States District Judge

---

[13]

The Court notes that any non-preempted claim for tortious breach of the implied covenant would fail as a matter of law because a petroleum franchise is not generally the type of "special relationship" required by Arizona law to support such a claim.  Simmons v. Mobil Oil Corp., 29 F.3d at 512.

- 17 -